## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

**KRISTOFER O'NEAL,**

      **Plaintiff,**                  **CASE NO.: 1:25-CV-25143-JB**

**v.**

**MANAGEMENT RESOURCES
INC., D/B/A MIAMI REGIONAL
UNIVERSITY,**

      **Defendant.**

_____/

## AMENDED COMPLAINT AND JURY DEMAND

COMES NOW, Plaintiff, KRISTOFER[1] O'NEAL (hereafter "Mr. O'Neal" or "Plaintiff"), by and through his undersigned attorney, pursuant to Federal Rules of Civil Procedure 15 (a)(1)(B)[2], and sues Defendant the MANAGEMENT RESOURCES, INC., D/B/A MIAMI REGIONAL UNIVERSITY, and in support thereof, avers as follows:

## NATURE OF THE ACTION

1.    This case is brought under the Americans with Disabilities Act ("ADA"), codified at 42 U.S.C. § 12101, *et seq*. and Section 504 of the Rehabilitation Act of 1973 (the "Rehab Act").

2.    Plaintiff Kristofer O'Neal struggles with a disability, namely Crohn's disease.

3.    After notifying Defendant, Miami Regional University ("MRU"), of his disability and requesting reasonable accommodation therefore to help him make up class work missed

---

[1] The correct spelling of the Plaintiff's first name is "Kristofer" and not "Kristopher." It was inadvertently misspelled in the original complaint.

[2] Rule 15 states in relevant part, "[a] party may amend its pleading once as a matter of course no later than: . . . (B). . . 21 days after the service of a motion under Rule 12(b). . ."

due to Crohn's disease flare-ups, MRU not only failed to grant the requested accommodation, but unjustifiably added additional stress to his final exam preparations, causing him to fail a make-up quiz. This failed make-up quiz resulted in Mr. O'Neal failing the class which MRU then used to improperly dismiss him from the Nursing Program. Following this dismissal, when Mr. O'Neal took steps to gain readmission, MRU refused to consider his disability documentation.

4.      In so doing, the Defendant violated both the ADA and Section 504 of the Rehab Act, causing the damages alleged herein.

## PARTIES

5.      At all times relevant, Plaintiff, KRISTOFER O'NEAL, (hereafter Mr. O'Neal" or "Plaintiff") was an adult resident citizen residing in Boynton Beach, Florida.

6.      At all times relevant hereto, Defendant MANAGEMENT RESOURCES INC., D/B/A MIAMI REGIONAL UNIVERSITY (hereafter "MRU") is a private postsecondary educational institution with the capacity to sue and be sued. Its offices are located in Miami, Florida. Defendant can be served with summons by serving its President and CEO, Ophelia Sanchez, at 700 S Royal Poinciana Blvd #100, Miami Springs, FL 33166.

## VENUE AND JURISDICTION

7.      Venue is proper in the Southern District of Florida, pursuant to 28 U.S.C. §§ 1391(b)(1) & (b)(2), as, upon information and belief, all Defendants maintained their principal office in, or were residents of, the State of Florida at the time of the acts and occurrences complained of herein.

8.      The Court has subject-matter jurisdiction over the Plaintiff's federal law claims pursuant to 28 U.S.C. §§ 1331.

9.      This Court also has supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367(a), as such claims are so closely related to Plaintiff's federal claims that they form part of the same case or controversy and arise out of a common nucleus of operative fact.

<u>**GENERAL FACTUAL ALLEGATIONS**</u>

10.     Plaintiff re-incorporates all prior factual allegations as if fully set out below.

11.     At all times relevant hereto, Plaintiff Kristofer O'Neal ("Plaintiff" or "Mr. O'Neal") was a full-time student at MRU's School of Nursing working toward achieving his MSN RN degree. After graduating from MRU, Mr. O'Neal planned to pursue an educational path to become a Certified Registered Nurse Anesthetist (CRNA) by taking additional courses at another nursing school.

12.     Mr. O'Neal has a disability. He suffers from Crohn's disease which tends to flare up and interfere with his studies occasionally, but particularly and with increasing severity during periods of mounting stress.

13.     On May 31, 2022, Mr. O'Neal informed MRU's ADA officer, Mitsy Sousa, that he needed accommodations for his disability because he expected to miss one or two classes in his Pediatrics and Obstetrics Nursing course. Instead of accepting his request for reasonable accommodation, Ms. Sousa informed him he did not need an accommodation for missing only one or two classes.

14.      On March 31, 2023, Mr. O'Neal emailed Mitsy Sousa again to request the forms his medical specialist needed to fill out so he could properly apply for accommodations for his disability. Ms. Sousa admitted that she, the university's Vice President of Human Resources & Public Relations and the designated ADA Officer for MRU, did not have the necessary forms and advised him to get the forms from "clinicals."

15.     On April 5, 2023, Mr. O'Neal emailed Sousa the form his medical specialist had filled out

for his prior school, the University of North Florida (UNF). The reasonable accommodations granted Mr. O'Neal by UNF included flexible attendance of classes, and the ability to make up exams and assignments within a reasonable amount of time as well as other items. At this point, MRU, through Ms. Sousa, had all the information necessary to either grant or deny Mr. O'Neal's request. The only item that Ms. Sousa listed as needing accommodation on follow-up forms was access to a restroom during class, but listed nothing about the flexibility of class attendance or the ability to make up exams and assignments within a reasonable time period. The bathroom accommodation was meaningless as any student could leave class on their own to visit the restroom as needed anyway. Mr. O'Neal only found out that this was the case (not being granted reasonable accommodations in the form of attendance flexibility and making up exams and assignments within a reasonable time) much later on from the appeal board during that process.

16.    On November 2, 2023, Mr. O'Neal requested accommodations for his disability for a third time and asked for a meeting with Ms. Sousa. He never received a response.

17.    In the meantime, on October 3, 2023, Mr. O'Neal informed the instructor of his Obstetrics and Pediatrics course, Professor Carolina Suarez, that he would not be able to make class that day because he felt ill with a flare-up of his Crohn's disease. A quiz was to be given that day, and Mr. O'Neal asked when he could make up the quiz. Professor Suarez did not respond.

18.    On October 20, 2023, Mr. O'Neal emailed Professor Suarez that he would again have to miss class due to his disability and that he had not heard back from her regarding the previous quiz. Suarez did not allow Mr. O'Neal to make up the quiz until the end of the semester. This posed a significant challenge to Plaintiff because it would compound his testing stress during the time when he had to prepare for his final exams in his other classes.

19.    On November 28, 2023, professor Suarez reserved a time for Plaintiff to make up the

missed quiz at the testing center of MRU.

20.     Because of this added stress and lack of time for proper preparation, Mr. O'Neal failed the make-up quiz.  Suarez made no attempt to work with Plaintiff to accommodate his disability.

21.     Upon information and belief, MRU routinely permitted non-disabled students who missed quizzes or examinations for non-medical reasons to make up such assessments promptly and without being required to wait until the end of the semester. This belief is supported by the fact that MRU and Professor Suarez had full discretion to schedule make-up assessments and did so for other students in the ordinary course of instruction. Plaintiff was treated less favorably than similarly situated non-disabled students because MRU refused to provide him with a timely make-up opportunity or other reasonable modifications that would have mitigated the impact of his disability.

22.     On December 17, 2023, Mr. O'Neal filed a grade appeal regarding Prof. Suarez' class.

23.     On December 22, 2023, the appeals committee canceled Plaintiff's appeal.

24.     In late December 2023, the appeals committee allowed Plaintiff to continue his appeal.

25.     On January 5, 2024, Plaintiff received an email from the appeals committee denying his appeal for allegedly not following the required procedure.

26.     On January 8, 2024, Plaintiff replied to the appeals committee questioning the committee's denial of his appeal.

27.     On January 11, 2024, the appeals committee informed Plaintiff that his appeal was already closed and that he may appeal their decision to the Office of the Provost.

28.     Subsequent to his dismissal from MRU and after his appeal was denied and finalized, Mr. O'Neal made efforts to gain readmission to the MRU School of Nursing. He followed the MRU

board's instructions to be reinstated to the nursing program by sending an e-mail to the Provost. However, Mr. O'Neal never received a response and by then the semester was already well underway. During this process, Mr. O'Neal's disability documentation was never considered. It remains Mr. O'Neal's intent to return to MRU's School of Nursing to continue pursuing his MSN RN degree. However, MRU's policies and refusal to consider and reasonably accommodate his disability is preventing this from happening.

29.     Plaintiff's intent to return to MRU is concrete, specific, and ongoing. Since his dismissal, Plaintiff has repeatedly attempted to resume his studies at MRU, including contacting the Provost's Office, reviewing MRU's published readmission procedures, and preparing the documentation required for reinstatement. Plaintiff remains academically eligible to return to MRU's MSN program but is presently prevented from doing so solely because MRU continues to refuse to acknowledge or accommodate his disability. Unless enjoined, MRU's discriminatory policies will again bar Plaintiff from equal access to MRU's educational services when he seeks readmission.

## <u>COUNT I</u>
## DISCRIMINATION BASED ON DISABILITY
## (42 U.S. Code § 12182 - Prohibition of Discrimination by Public Accommodations)

30.     Subsection (a) of 42 U.S. Code § 12182 provides the following:

> (a)General rule

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

31.     Subsection (b)(2)(A) provides in relevant part that:

> (A)Discrimination

> For purposes of subsection (a), discrimination includes—

> (i)the imposition or application of eligibility criteria that screen out or tend to screen

out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered;

32.     At all times relevant, Defendant MRU was a private university that accepts federal

funding.

33.     At all times relevant, MRU displayed the following legend on its website:

**EQUAL OPPORTUNITY AND NONDISCRIMINATION**

Miami Regional University is committed to providing a high-quality education to all students without regard to race, religion, color, gender, sexual orientation, genetic information, age, disability, national origin, veteran status, marital status or political affiliation. The University promotes an open and diverse culture, and will not tolerate discrimination against or harassment of any individual or group. Students, faculty, and staff should be afforded equal opportunity to participate in University programs and use University facilities free of discrimination or harassment. This policy applies to all University students, faculty, staff, and other employees of Miami Regional University, and to any person or group acting within or on behalf of the University.

34.     By denying Plaintiff the accommodations he requested and was entitled to, all named

Defendants, acting individually or in combination with each other, imposed or applied eligibility

criteria that screened or tended to screen out an individual with a disability, to wit, the Plaintiff,

from fully and equally enjoying the College's goods, services, facilities, privileges, advantages, or

accommodations.

35.     By virtue of holding itself out and operating as a postsecondary educational institution,

Defendant MRU comes within the definition of a "public accommodation" pursuant to 42 U.S.C.

§ 12181(7)(J).

36.     As a public accommodation, MRU is subject to the antidiscrimination provisions contained

within the Americans with Disabilities Act as codified in Chapter 126 of Title 42, United States

Code.

37. Plaintiff had been diagnosed with Crohn's disease, was suffering from Crohn's disease, and provided Defendants with all necessary information to enable MRU to provide him with the accommodations Plaintiff requested. These conditions, alone and in combination, interfered with Plaintiff's ability to learn and thus constitute a disability within the meaning of 42 U.S. Code § 12102(1)(A) because they substantially interfered with a major life activity of his, to wit, his ability to study and attend required classes. *See* 42 U.S. Code § 12102(2)(A). In Plaintiff's case here, the major life activities impacted and substantially limited by his diagnosed condition include "learning, reading, concentrating, thinking, communicating, and working." *Id*.

38. Pursuant to 42 U.S. Code § 12102(4)(A), the term "disability" shall be construed "in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." *Id*.

39. The Defendants herein were first made aware of Plaintiff's conditions on May 31, 2022, when Plaintiff emailed ADA Officer Mitsy Sousa concerning his disability and requested a reasonable accommodation.

40. The Defendants were further made aware of Plaintiff's disability on March 31, 2023 and November 2, 2023, all to no avail.

41. By failing to provide the requested accommodations, Defendant MRU discriminated against Plaintiff on the basis of his disability by subjecting him "directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity … to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations" of the College.

42. The Defendants' aforementioned discrimination was the direct and proximate cause of Plaintiff's inability to pass the make-up quiz in Professor Suarez' class and was thereby the cause of his dismissal from the program.

## COUNT II
## DISCRIMINATION, VIOLATING SECTION 504
### (29 U.S. Code § 701, et seq. - Prohibition of Discrimination by Recipients of Federal Funding)

43.     Plaintiff incorporates by references all allegations above as if fully stated herein.

44.     At all times relevant hereto, MRU was a "program or activity receiving Federal financial assistance" within the meaning of 29 U.S.C. Section 794(b)(2)(A). The College was therefore subject to Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. Sections 701 *et seq*.)

45.     Plaintiff informed the College of his disability and requested reasonable accommodation for his Crohn's disease.

46.     MRU refused to provide the accommodation requested.

47.     The accommodation requested would not have imposed a substantial (or even a minimal) financial or other burden on the College.

48.     Plaintiff's academic difficulties were not independent of his disability; they were the direct and foreseeable result of MRU's refusal to provide the accommodations necessary for him to participate on equal footing with non-disabled students. The missed quizzes, delayed make-up testing, and compounded end-of-semester workload were all consequences of MRU's failure to implement the accommodations Plaintiff repeatedly requested. But for MRU's refusal to provide reasonable accommodations, Plaintiff would not have been placed in the academically compromised position that led to his dismissal.

49.     At all times relevant hereto, Plaintiff was a qualified individual with a disability as defined in 29 U.S.C. Section 705(20)(B) and further defined in 42 U.S.C. Section 12102(1). Had Mr. O'Neal been granted the requested reasonable accommodations for his disability (Crohn's disease), he would certainly have excelled academically, not failed the quizzes that he did, and not been dismissed from MRU. The failure of MRU to follow through on Mr. O'Neal's requested

reasonable accommodations had a deleterious cascading and spiraling impact on his ability to satisfactorily complete the MRU School of Nursing curriculum. The fewer reasonable accommodations he received, the worse Mr. O'Neal did academically, and the worse he performed academically, the more he stressed out and had anxiety. In turn, the more he stressed out, the worse he did academically, and so on.

50.    By refusing to accommodate Plaintiff after having been notified of Plaintiff's disability, MRU discriminated against Plaintiff based solely upon Plaintiff's known disability in violation of 29 U.S.C. Section 794(a). The Plaintiff's academic struggles outlined above in the factual basis paragraphs were the direct and foreseeable result of MRU's refusal to grant Mr. O'Neal the reasonable accommodations that he requested. Had MRU followed through and granted these reasonable accommodations in a timely manner, there would have been no academic struggles. This is corroborated by the fact that early on in his MRU career, before his Crohn's flared up, Mr. O'Neal was able to perform academically at least at a satisfactory level.

51.    In so doing, the College excluded Plaintiff from the participation in, denied him the benefits of, and subjected Plaintiff to discrimination under, a program or activity receiving Federal financial assistance in violation of that statute. This demonstrates a pattern of deliberate indifference on the part of MRU. It was an act of deliberate indifference to grant the Plaintiff only the paltry and meaningless RA of being able to access the restroom during class (which even non-disabled students had the ability to do to begin with). Another example of MRU's deliberate indifference to his disability was their refusal to consider Mr. O'Neal's disability when it never responded to Mr. O'Neal's efforts to obtain readmission to the MRU nursing school.

52.    MRU's deliberate indifference is further demonstrated by the fact that its designated ADA Officer, Vice President Mitsy Sousa, possessed actual knowledge of Plaintiff's disability and of

the substantial likelihood that denying accommodations would prevent Plaintiff from meeting essential academic requirements. Despite this knowledge, Sousa repeatedly failed to act, failed to process Plaintiff's requests, and failed to implement accommodations that MRU was legally obligated to provide. Sousa's position as MRU's ADA Officer vested her with authority to correct the violation, yet she consciously chose not to do so.

53.     Plaintiff hereby sues for compensatory damages and attorney's fees as provided by 29 U.S. Code § 794a.

**COUNT III:**
**BREACH OF CONTRACT**

54.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

55.     Plaintiff Kristofer O'Neal entered into a contractual relationship with Defendant MRU for the provision of educational services for him wherein Plaintiff agreed to pay required tuition fees and Defendant agreed to provide the instruction, testing, facilities, and programs and accommodations required for Plaintiff to earn and acquire his desired nursing degree.

56.     This relationship was memorialized through written enrollment agreements, tuition contracts, and school communications, and was further supported by implied promises arising from Defendant's stated mission, policies, and representations to students and prospective students.

57.     As with most institutions of higher learning, this contract was not a traditional contract such as might be used between two businesses or merchants exchanging goods and services for payment. Here, the contract took the form of MRU setting forth its course offerings, degree programs, tuition requirements, and policies and procedures, on the one hand, and Mr. O'Neal taking all of that into consideration when deciding to attend MRU and then submitting his

application for admission, on the other. Once MRU approved Mr. O'Neal's application for admission, and he, in turn, notified MRU that he did, in fact, intend to start attending classes in May 2022, a contract was effectuated.

58.     The contractual relationship between Plaintiff and MRU was further defined by specific written documents, including MRU's Enrollment Agreement, Tuition and Financial Responsibility Contract, Student Handbook, Academic Catalog, and MRU's published Disability Services Policy. These documents collectively set forth the rights, obligations, and expectations governing Plaintiff's enrollment, including MRU's express commitment to comply with the ADA and Section 504 and to provide reasonable accommodations to qualified students with disabilities. These written materials formed part of the binding contract between Plaintiff and MRU.

59.     Defendant expressly and implicitly represented that it would provide educational services in accordance with applicable laws, professional standards, and its own stated commitment to supporting the academic, emotional, and developmental needs of its students.

60.     MRU makes clear on its website that "MRU complies with the Americans with Disabilities Act of 1990 (the "ADA"), the Rehabilitation Act of 1973, and other applicable disability discrimination laws. MRU is committed to providing reasonable accommodation(s) to qualified disabled applicants and learners in MRU programs and activities as required by applicable law." It further holds itself out to prospective and current students as a willing and committed observer and follower of all applicable federal and state disability law: "Miami Regional University ("MRU") is committed to providing equal access of its academic programs to all qualified students. MRU provides support, resources and academic accommodations in accordance with federal and state statutes and regulations to MRU students.

61.     This policy establishes guidelines for qualified current and prospective students with

disabilities to seek academic accommodations at MRU." https://mru.edu/disability-services. Thus, once a prospective student takes MRU up on its acceptance of that student into the next class at the nursing school (as Mr. O'Neal did), this policy statement and University position becomes an implicit part of the contract between student and university.

62.    Plaintiff reasonably relied on these representations in enrolling himself in nursing school, paying tuition and fees, and entrusting Defendant with his education.

63.    Defendant breached this contract by:

     a.   Failing to implement reasonable accommodations for Mr. O'Neal despite his documented disabilities made to the applicable MRU department.

     b.   Repeatedly making what reasonable accommodations it did make in a half-hearted and dilatory manner.

     c.   Failing to consider Plaintiff's disability in his efforts to gain readmission following his dismissal.

64.    As a direct and foreseeable result of Defendant's breach, Plaintiff was deprived of the educational services for which he paid.

65.    Defendant's failure to uphold its contractual obligations caused substantial financial harm, emotional distress, and educational instability for the Plaintiff.

66.    Plaintiff is entitled to compensatory damages for breach of contract, including restitution of tuition paid, consequential damages, and any other relief the Court deems just and proper.

## ATTORNEY'S FEES AND COSTS

67.    As a direct result of the actions of the defendants heretofore mentioned, Plaintiff was forced to retain the undersigned counsel and expend attorney's fees, litigation expenses, and costs of court. Pursuant to 28 CFR Part 36, Subpart E, § 36.505, Plaintiff hereby requests that the Court

order Defendants to pay Plaintiff's attorney's fees and costs of court.

## **PRAYER FOR RELIEF**

**WHEREFORE,** for the foregoing reasons and pursuant to the causes of action stated above, Plaintiff KRISTOFER O'NEAL respectfully request that this Court enter judgment in his favor and against Defendant MANAGEMENT RESOURCES, INC., D/B/A MIAMI REGIONAL UNIVERSITY, and award the following relief:

a. General damages for emotional distress, pain and suffering, and loss of enjoyment of life;

b. Compensatory damages for educational disruption, financial loss, and deterioration of mental health;

c. Restitution of tuition and fees paid for educational services not properly delivered;

d. Punitive damages for intentional and reckless disregard of Plaintiff's federally and state-protected rights;

e. Injunctive relief requiring Defendant to:

   i. Implement appropriate accommodations for students with documented physical disabilities;

   ii. Conduct mandatory training for faculty and staff on ADA, Section 504, FERPA, and Florida disability law;

   iii. Reform its disciplinary and accommodation procedures to ensure compliance with federal and state law;

   iv. Readmit the Plaintiff to MRU's School of Nursing program at the point where he was dismissed without penalty or retaliation.

f. Reasonable attorney's fees and costs of suit pursuant to applicable federal and state

statutes, including 42 U.S.C. § 1988 and 29 U.S.C. § 794a(b);

g.  Pre- and post-judgment interest as permitted by law;

h.  Any other relief the Court deems just, proper, and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action of all issues so triable.

## CERTIFICATION

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Respectfully Submitted,
**LENTO LAW GROUP, P.C.**

Robert S. Mactavish, Esquire
Florida Bar No. 0596388
Phoenix Corporate Tower
3003 N. Central Avenue
Suite 685
Phoenix, AZ 85012
P: 575-517-6542
*Attorney for Plaintiff*