**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No. 1:25-cv-25143-JB

KRISTOFER O'NEAL,

      Plaintiff,

v.

MANAGEMENT RESOURCES INC.,
D/B/A MIAMI REGIONAL UNIVERSITY,

      Defendant.

_____/

**DEFENDANT MIAMI REGIONAL UNIVERSITY'S MOTION TO DISMISS**
**AMENDED  COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Comes now, Defendant, Management Resources Inc., d/b/a Miami Regional University ("MRU"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and Local Rule 7.1(a)(1), by and through undersigned counsel, to file its Motion to Dismiss Plaintiff's Amended Complaint ("Amended Complaint") and incorporated Memorandum of Law, and in support thereof states as follows:

The Amended Complaint tells a story of a student who missed class, failed a quiz, exhausted an internal appeal, and was dismissed from a nursing program at MRU. At its core, the Amended Complaint challenges a series of academic judgments – namely, the scheduling of an examination, the grading of that examination, the application of course requirements to a final grade, the disposition of a grade appeal – and asks this Court to reverse them. The Amended Complaint dresses its challenge in the language of disability law and contract, but beneath that language the Amended Complaint remains, in substantial part, a request that a federal court sit as a super-appellate board over the academic decisions of a private university.

1

Plaintiff brings a lawsuit under the ADA (Count I), Section 504 of the Rehabilitation Act of 1973 (Count II), and Florida contract law (Count III). Plaintiff grounds his Amended Complaint on the assumption that he suffers from a disability that qualifies him to preferential treatment under the ADA and Section 504; for the purposes of this motion, that is a factual matter that this Court must treat as true.

Plaintiff's Amended Complaint, however, fails for legal reasons, even when all alleged facts are treated as true, reasons that do not depend on resolving factual disputes in Defendant's favor: the Plaintiff lacks standing to obtain injunctive relief, the only relief Title III authorizes, *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328–29 (11th Cir. 2013); his own factual narrative in the Amended Complaint demonstrates that Plaintiff cannot plead facts sufficient to show that discrimination was the sole cause of his losing his position – a strict standard a plaintiff must meet in order to recover under Section 504 of the Rehabilitation Act of 1973, *T.W. ex rel. Wilson v. School Bd. of Seminole County, Fla.,* 610 F.3d 588 (2010); his description of the ADA officer's conduct in the Amended Complaint cannot plausibly be read, even on the most generous reading, to describe deliberate indifference rising **beyond** gross negligence, as is the standard to recover under Section 504, *D.D.T. by and through S.C. v. Rockdale County Public Schools*, 580 F.Supp.3d 1314 (N.D. Ga. 2021); and his contract claim identifies no contractual promise distinct from Plaintiff's recitals of Defendant's supposed statutory duties, *Kuong v. Giordano*, 346 So.3d 108 (Fla. 1st DCA 2022)("performance of an act that already is required as an indisputable legal duty owed to the promisor is not consideration in support of a contract").

The Amended Complaint was filed in response to MRU's initial Motion to Dismiss, and seeks to cure the deficiencies that Defendant's initial motion identified. But it does so by reciting legal standards, rather than alleging the actual facts needed to satisfy those standards.

MRU submits that the Amended Complaint should be dismissed in its entirety.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The pleaded facts must "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts well-pleaded factual allegations as true and draws reasonable inferences in the plaintiff's favor, but it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555). A complaint that offers only labels and conclusions or a formulaic recitation of the elements of a cause of action does not survive.

Where a complaint seeks injunctive relief, the plaintiff must also establish Article III standing by demonstrating a real and immediate threat of future injury. *Smith v. Miorelli*, 93 F.4th 1206, 1212 (11th Cir. 2024); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)(allegations of merely possible future injury are not sufficient).

## ARGUMENT AND INCORPORATED MEMORANDUM OF LAW

**I.    PLAINTIFF LACKS ARTICLE III STANDING BECAUSE HIS RETURN TO MRU DEPENDS ON CONTINGENCIES HE DOES NOT CONTROL**

This Court lacks subject matter jurisdiction to grant injunctive relief to Plaintiff, because Plaintiff is unable to allege with sufficient detail an immediate threat of future injury. Yet Title III authorizes no other form of relief for a private plaintiff. Count I must therefore be dismissed.

Title III of the ADA authorizes only injunctive relief for private plaintiffs. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328–29 (11th Cir. 2013). A plaintiff who seeks an injunction must demonstrate that he faces a real and immediate threat of future injury. *Smith v. Miorelli*, 93 F.4th 1206, 1212 (11th Cir. 2024). That analysis is a matter of subject-matter

jurisdiction, and failure to allege a sufficiently real and immediate threat of future injury is a constitutional bar. *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1232 (11th Cir. 2021)("that showing is required not by the statute, but by the Constitution"). Past exposure to allegedly unlawful conduct does not, standing alone, establish a present case or controversy regarding prospective relief. *J W by & through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1264 (11th Cir. 2018). The plaintiff must show that the threat is concrete, not speculative; imminent, not remote; and traceable to the defendant's conduct, not dependent on a chain of contingencies. *Clapper*, 568 U.S. at 409–14. The threat must be of an injury the plaintiff himself will suffer. *Piescik v. CVS Pharmacy, Inc.*, 576 F. Supp. 3d 1125, 1131 (S.D. Fla. 2021).

The Amended Complaint alleges that Mr. O'Neal intends to return to MRU's School of Nursing. It alleges that he has "contacted the Provost's Office," "reviewed MRU's published readmission procedures," and "prepared the documentation required for reinstatement." It alleges that his intent to return is "concrete, specific, and ongoing."

One must read these allegations with care. They track the legal standard for standing almost word for word. But they do not supply the actual *concrete facts* that would make the standard operative. Consider what the Amended Complaint does not allege: it does not allege that Mr. O'Neal ever applied for readmission, or that he submitted an application of any kind. It does not allege that MRU accepted O'Neal's application for readmission – or even that MRU policy would permit MRU to extend readmission to someone with O'Neal's academic record. It does not allege a single, discrete step that culminated in any genuine official action after early 2024.

The Amended Complaint concedes that Mr. O'Neal was dismissed from the nursing program. Am. Compl. ¶ 3. It concedes that he was granted accommodation for his gastro-intestinal distress, ¶18, though not on Plaintiff's preferred timeline. The Amended Complaint concedes he

appealed the make-up quiz he failed – a make-up quiz that he was indeed allowed to take at a different time in order to accommodate his gastric complications, but that his appeal was denied. ¶25. He is not presently enrolled. He has not been readmitted. He has alleged that he contacted the school Provost, but an unanswered inquiry does not constitute the kind of "concrete plans" the Eleventh Circuit requires in order to find that a plaintiff has alleged sufficient probability of future injury in a Title III suit. *Kennedy*, 998 F.3d at 1234 (holding that intentions to perform future actions, without any description of concrete plans are insufficient to warrant an injunction arising from those actions).

Mr. O'Neal cannot return to MRU merely by choosing to do so. He failed his coursework and was dismissed from the program. Readmission requires MRU to exercise its discretion in his favor. Mr. O'Neal must allege a future injury to prevail in a Title III claim, and his only conceivable future injury, the prospect of his being denied accommodations upon re-enrollment, depends on a prior contingency he does not control: a favorable readmission decision that has not occurred and that the Amended Complaint does not allege is forthcoming.

The Supreme Court has held that a threatened injury must be certainly impending to constitute an injury in fact and that allegations of possible future injury are insufficient where the plaintiff's theory depends on a chain of contingencies. *Clapper*, 568 U.S. at 409, 414. This Circuit has drawn the same line: "future injury that depends on either the random or unauthorized acts of a third party is too speculative to satisfy standing requirements." *31 Foster Children v. Bush*, 329 F.3d 1255, 1266 (11th Cir. 2003); *see also Food & Drug Admin. v. Alliance for Hippocratic Med.*, 602 U.S. 367, 381 (2024). A plaintiff cannot manufacture standing for injunctive relief by expressing an intention to do something that requires a third party's discretionary approval.

The most recent event alleged in the Amended Complaint occurred in January 2024. The original Complaint was filed in November 2025. The Amended Complaint was filed in March 2026. The Amended Complaint alleges that Mr. O'Neal contacted the Provost's Office, but it does not allege that those contacts produced any application, any pending proceeding, or any event that would suggest that O'Neal's readmission is in any way probable.

The allegations at paragraphs 28 and 29 are precisely the kind of legal conclusion couched as factual allegations that the Supreme Court has instructed district courts to disregard. They recite the elements of standing without providing the factual predicate those elements require. Count I fails entirely, because Title III authorizes only injunctive relief, and this Court does not have subject-matter jurisdiction to enter an injunction in Mr. O'Neal's favor when he has failed to allege a plausible threat of future injury.

## II. THE AMENDED COMPLAINT SEEKS CATEGORIES OF DAMAGES THAT THE LAW DOES NOT AUTHORIZE

Even if any claim survives on the merits, the Amended Complaint seeks categories of damages that no applicable statute or doctrine authorizes. Those demands must be dismissed regardless of whether the underlying claims state a cause of action.

### A. Title III Does Not Authorize Compensatory or Punitive Damages.

The Amended Complaint's prayer for relief seeks compensatory damages, general damages for emotional distress, and punitive damages. Under Count I, none of these is available. Title III limits private plaintiffs to injunctive relief. *Houston*, 733 F.3d at 1328–29.

### B. Punitive Damages Are Unavailable Under Any Count.

The Amended Complaint demands punitive damages at prayer paragraph (d). Punitive damages are unavailable for Counts I, II, and III. Under Title III, punitive damages are unavailable for the reasons stated *supra*. For Count III, a count under contract law, punitive damages are

unavailable because in Florida contract law, punitive damages require an independent tort. *Ferguson Transp., Inc. v. North American Van Lines, Inc.*, 687 So. 2d 821, 822 (Fla. 1996); *Abad v. Lacalamita*, 353 So. 3d 1217, 1219 (Fla. 3d DCA 2022). The Amended Complaint does not plead an independent tort capable of resolving in punitive damages. Punitive damages are similarly unavailable for Count II under Section 504, because Section 504 is Spending Clause legislation (it expressly regulates only those who receive federal funds), and the Supreme Court has held that the remedies available under Spending Clause statutes mirror those available in contract. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 220-221 (2022). Punitive damages are not a contractual remedy. Therefore they are not a Section 504 remedy.

The demand for punitive damages should be stricken across all three counts.

### C. *Emotional-Distress Damages Under Count III Are Barred.*

The Amended Complaint seeks general damages for "emotional distress, pain and suffering, and loss of enjoyment of life" under its breach-of-contract count. Florida does not permit recovery of emotional-distress damages for breach of contract absent an independent tort. *Henry Morrison Flagler Museum v. Lee,* 268 So.2d 434, 436-37 (1972)("where the gravamen of the proceeding is breach of contract, even if such breach be willful and flagrant, there can be no recovery for mental pain and anguish resulting from such breach"). Plaintiff's request for emotional distress is not available under breach of contract, and his prayer for damages should be stricken.

## III.   COUNT III FAILS TO IDENTIFY A CONTRACTUAL OBLIGATION BREACHED INDEPENDENTLY OF THE STATUTORY CLAIMS

If the Amended Complaint fails to identify a specific contractual term that MRU breached independently of its statutory obligations, Count III must be dismissed.

The Amended Complaint names specific documents at paragraph 58: an Enrollment Agreement, a Tuition and Financial Responsibility Contract, a Student Handbook, an Academic Catalog, and a Disability Services Policy. Yet the Amended Complaint still fails to cite the specific terms breached, as a breach-of-contract claim requires, aside from vague language reciting on the school website the school's statutory duties.

Courts have dismissed breach of contract claims where plaintiffs failed to identify specific contractual promises that were breached. For example, the Third District affirmed a dismissal for failure to state a cause of action in a case that had almost an identical fact pattern to the one at bar: the plaintiff "failed to identify a specific contractual promise the University breached" where his allegations stated only that university violated broad policy statements contained in its student handbook. *Tercier v. University of Miami, Inc.*, 383 So.3d 847, 852 (2023). The Third District affirmed the dismissal, waiving off as "without merit" (at 850) the Plaintiff's protests that identifying the University's failure to live up to broad policy statements in the handbook was sufficient to impose liability where the student himself had poor grades and (like the current Plaintiff) failed one of his courses (at 852).

The present Amended Complaint lists various instruments the Plaintiff proposes might constitute a contract breached, ¶58, but provides insufficient clarity concerning what terms in those documents were breached, what they promised, and how MRU failed to honor the promise. It cites language from the University website that merely recites statutory duties, and therefore could not plausibly be interpreted as forming the terms of a contract: "MRU complies with the Americans with Disabilities Act… and other applicable discrimination laws…" ¶60-61. These are statements of legal compliance. They describe what the law already requires, legal obligations that exists whether or not the statement is made. Agreeing to perform a statutory duty cannot constitute valid

consideration for a contract. *Koung v. Giordanao*, 346 So.3d 108 (2022); See also *F.L. Stitt & Co. v. Powell*, 94 Fla. 550 (1927)(promise to carry out subsisting obligation not consideration for another contract).

## IV.   TO THE EXTENT THE AMENDED COMPLAINT CHALLENGES ACADEMIC JUDGMENTS, THIS COURT SHOULD DECLINE TO REVIEW THEM

To the extent the Amended Complaint asks this Court to reverse grading decisions, course outcomes, appeal dispositions, and readmission determinations, those challenges must be dismissed or stricken because federal courts do not sit as appellate tribunals over academic judgments. Federal courts accord substantial deference to the academic decisions of educational institutions. This deference is a constitutional and prudential principle rooted in the recognition that courts are not equipped to evaluate the substance of academic judgments. *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 225-26 (1985).

Several of the adverse events alleged in the Amended Complaint are plainly exercises of academic judgment.[1] Professor Suarez chose to grant Mr. O'Neal his requested accommodation: a chance to make up a missed quiz. ¶18. She graded the makeup quiz, which he failed. ¶18. The appeals committee reviewed his challenge and denied it because O'Neal failed to follow internal university procedure. ¶25. The university has not chosen to readmit him. Each of these decisions reflects the kind of professional evaluation that courts have long refused to second-guess. To the extent the Amended Complaint asks this Court to reverse MRU's exercise of academic judgment, it asks for relief that academic deference forecloses. *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d

---

[1]  Other allegations in the Amended Complaint – for example, those concerning the alleged delay in processing accommodation requests, and the alleged inadequacy of the accommodation granted – raise questions that are not purely academic in character. MRU does not contend that academic deference shields every allegation in the Amended Complaint. The non-academic allegations fail for independent reasons addressed elsewhere in this motion.

1041, 1047 (9th Cir. 1999). The ADA and Section 504 protect disabled students against discrimination. They do not insulate them against academic failure. They do not entitle students to pass examinations they did not pass, or to reverse grades they earned, or to compel readmission to programs from which they were dismissed for academic reasons.

## V.     THE AMENDED COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT PLAINTIFF WAS A "QUALIFIED INDIVIDUAL"

If Plaintiff was not a qualified individual within the meaning of the ADA and Section 504, both Count I and Count II fail at the threshold, without regard to any other deficiency.

The Court has before it a narrow question at the motion to dismiss stage: whether the Amended Complaint, taken on its own terms, pleads sufficient facts to support the legal conclusion that Mr. O'Neal was a qualified individual who could meet the program's essential requirements with reasonable accommodation. The Amended Complaint fails in that respect.

Both the ADA and Section 504 protect only a "qualified individual with a disability", which is a person who, with or without reasonable accommodation, can meet the essential requirements of the program in which he participates. *Nehme v. Florida Int'l Univ. Bd. of Trs.*, 121 F.4th 1379, 1385 (11th Cir. 2024)(holding that "the law does not require medical schools to retain students who cannot perform the coursework, and neither will we"). A "qualified individual" is someone who can meet "the essential eligibility requirements" of an academic program, either "with or without reasonable modifications to rules, policies, or practices." 42 U.S.C. § 12131(2). To meet this standard, a student must be able to meet the program's academic requirements when they are given reasonable accommodations for their disability. *See* 34 C.F.R. § 104.3(*l*)(3).

Plaintiff cannot allege sufficient facts to demonstrate that he is a qualified individual under those standards. In *Nehme*, a medical student who failed courses after receiving accommodations for final exams was found not to be a qualified individual. 121 F.4th at 1386. In *J.A.M. v. Nova*

10

*Southeastern University, Inc.*, 646 F. App'x 921, 924 (11th Cir. 2016), a medical student with major depressive disorder was not qualified for the career despite intensive treatment. The Eleventh Circuit held that demanding leaves of absence and exam rescheduling "would fundamentally alter his course of study", and therefore would introduce unnecessarily into academic judgment of universities. In the present case, the student was *granted* the opportunity to reschedule his exam (something the Eleventh Circuit declined to impose in *J.A.M. v. Nova*), and *still* failed. In *Cooney v. Barry School of Law*, 720 F. App'x 571, 573 (11th Cir. 2018), a law student was not qualified where he achieved only a 1.879 GPA after receiving some accommodations for his disability. Institutions need not endeavor "to lower or to effect substantial modifications of [their] standards" to accommodate disabilities. *Southeastern Cmty. Coll. v. Davis*, 442 U.S. 397, 413 (1979)(holding that the purpose of the nursing program "was to train persons who could serve the nursing profession in all the customary ways").

The Amended Complaint presents a single factual predicate to support O'Neal's contention that he is a qualified individual under the ADA: "early on in his MRU career, before his Crohn's flared up, Mr. O'Neal was able to perform academically at least at a satisfactory level." ¶50. That phrase describes a period before the events at issue, not during them. The question is not whether Mr. O'Neal once performed adequately in the abstract; it is whether he could meet the nursing program's essential academic requirements with reasonable accommodation during the period in which the alleged discrimination occurred. The Amended Complaint provides no factual basis for that conclusion. It does not identify the nursing program's essential academic requirements, does not allege with sufficient specificity what accommodations would have enabled the Plaintiff to meet them, and does not allege facts from which the Court could infer a plausible connection between the accommodations sought and the requirements imposed.

11

The Amended Complaint attributes each of Mr. O'Neal's academic difficulties to the failure of MRU's accommodation. But that attribution is itself the conclusion that must be established, not assumed. The Amended Complaint asserts baldly that Plaintiff could meet the program's standards with accommodation, rather than pleading facts from which that conclusion plausibly follows.

## VI.   COUNT II FAILS TO PLEAD "SOLELY BY REASON OF" DISABILITY OR DELIBERATE INDIFFERENCE

Count II seeks relief under 29 U.S.C. Section 794(b)(2)(A), which would subject MRU to Section 504 of the Rehabilitation Act of 1973. Section 504 requires a plaintiff to plead that his exclusion occurred "solely by reason of" discrimination, *T.W. ex rel. Wilson v. School Bd. of Seminole County, Fla.,* 610 F.3d 588 (2010). In *T.W. ex rel. Wilson*, the plaintiff was unable to recover, even despite having been beaten repeatedly by his classmates, having had his head smashed into his desk on multiple occasions, and having been left on multiple occasions covered in urine and feces. The Eleventh Circuit *nonetheless* held that the plaintiff could *not* recover under Section 504 because he had not proved that his nightmarish school experience occurred "solely by reason of" discrimination.[2]

In order to determine whether a plaintiff has suffered "solely by reason of" discrimination under Section 504, a Court will inquire as to whether discrimination occurred at all; to do that, the Court must consider whether the defendant acted either with open malice or with deliberate indifference – a term of art defined by federal caselaw, as described *infra*. If Plaintiff's Amended Complaint fails to plead sufficient facts to demonstrate that MRU acted with deliberate indifference, or if it fails to plead sufficient facts to show that  plaintiff's alleged injury was caused

---

[2]  The Court held at the same time that the school was not liable for having acted with deliberate indifference; this Motion will address that standard in the subsection that follows.

"solely by reason of" discrimination due to his disability, then Mr. O'Neal cannot recover under Section 504, and Count II must be dismissed.

MRU recognizes that the Court must accept well-pleaded factual allegations as true at this stage. MRU does not ask the Court to resolve any disputed question of fact. Rather, MRU submits that the Amended Complaint's own factual narrative, even when read in the light most favorable to the Plaintiff, does not satisfy the legal standards that Section 504 imposes. The Amended Complaint's allegations, taken as true, describe conduct that does not meet the standards set by federal caselaw in determining either that a Plaintiff was excluded "solely by reason of" discrimination due to his disability, or that the Defendant institution acted with deliberate indifference, as defined and articulated by the federal circuits. Plaintiff's Amended Complaint fails to make factual allegations that fall within the constellation of plausible scenarios that satisfy the two standards ("solely by reason of" and "deliberate indifference") that have been articulated and refined by the federal circuits in ADA caselaw. If a complaint fails to make sufficient factual allegations to meet those two standards, it may be disposed of in a 12(b) motion. *See Iqbal*, 556 U.S. at 678–79 (distinguishing factual allegations, which must be accepted as true, from legal conclusions, which need not be).

### A. The Amended Complaint's Own Narrative Defeats the "Solely by Reason of" Standard.

Section 504 requires that a plaintiff show he was excluded or discriminated against "solely by reason of" a disability. *T.W. ex rel. Wilson v. School Bd. of Seminole Cty.*, 610 F.3d 588, 604 (11th Cir. 2010). The Amended Complaint cannot satisfy this standard because its own factual narrative supplies a list of separate, non-discriminatory causes for O'Neal losing his position at MRU.  Indeed, between the accommodation dispute and Mr. O'Neal's dismissal, the Amended Complaint describes a chain of events, each involving an independent judgment or independent

action: (1) Professor Suarez exercised her scheduling discretion and set the makeup quiz for the end of the semester, ¶ 19; (2) Mr. O'Neal sat for the quiz and failed it, ¶ 20; (3) course requirements determined that his quiz grade, combined with his other performance, resulted in a failing course grade, ¶¶ 20–22; and (4) the appeals committee reviewed his grade challenge and denied it, ¶¶ 23–27. Each of the foregoing causes intervened upon the facts of the present case, and undermine Plaintiff's that MRU removed him from the program "solely by reason of" his disability.

The Amended Complaint does not allege that the quiz was graded differently because of Mr. O'Neal's disability – only that the accommodation he requested of the professor was granted to other students "upon information and belief" (read: upon bald speculation). Each intervening event reflects an independent judgment. The Amended Complaint, then, itself identifies causes other than disability for O'Neal's removal from the program: academic standards, scheduling discretion, grading, and appellate review. MRU makes no claim one way or another at this time about whether O'Neal has a genuine disability, and makes no defense at the motion to dismiss stage over whether his alleged disability was even among the causes of his being removed from the program, since this Court must accept all of Plaintiff's allegations for moment as true. However, even accepting Plaintiff's allegations true, the Amended Complaint in its own facts recounts *several* causes for Plaintiff's losing his position at MRU; Section 504 requires there to be one and only one, to the exclusion of all others: the plaintiff's disability.

### B. The Factual Allegations Do Not Describe Deliberate Indifference.

In order to determine that discrimination against a disability is the sole cause a court must consider whether discrimination is a cause *aliquo modo*. The federal circuits have developed a "deliberate indifference" standard by which a plaintiff can show that a given defendant has engaged in potentially culpable discrimination. *Liese v. Indian River County Hosp. Dist.,* 701 F.3d

14

334 (11 Cir. 2012). "Deliberate indifference" requires that an official with authority to address the alleged discrimination had actual knowledge of a substantial likelihood of discrimination and consciously chose not to act. It is a demanding standard, occupying a space well beyond incompetence, and **beyond even gross negligence**.[3] *McCullum v. Orlando Regional Healthcare System, Inc.*, 768 F.3d 1135 (11th Cir. 2014); *Estate of Schultz v. Board of Regents of University System of Georgia*, 554 F.Supp.3d 1274 (2021). It requires the defendant to have made a conscious decision to do nothing in the face of a known obligation. *T.W. ex rel. Wilson v. School Bd. of Seminole County, Fla.,* 610 F.3d 588 (2010).

The Amended Complaint adds the words "deliberate indifference" at paragraphs 51 and 52 in the hope, presumably, of alleging the relevant legal standard in the absence of alleging the facts that would meet said standard. It alleges that Mitsy Sousa, MRU's ADA Officer, "possessed actual knowledge" of Mr. O'Neal's disability and "consciously chose not to" act. These are the precise words of the legal standard, derived from the caselaw already cited here. They are not actual narrative facts that describe with sufficient specificity what *actually occurred* to evidence Ms. Sousa's purported conscious choice not to act.

---

[3] Gross negligence itself is an exacting standard, as it describes conduct "so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct." Fla. Stat. § 768.72(2)(b). The defendant must be guilty of "acts of a gross and flagrant character evincing a reckless disregard of human life, or which shown wantonness or recklessness or a grossly careless disregard of the safety and welfare of [others]." *Rodriguez v. Gonzalez*, 157 So.2d 848, 849 (Fla. 2nd DCA 1963). Such wanton and reckless conduct would be: choosing to drive a car when defendant knows she is likely to lose consciousness while driving, *Goodis v. Finkelstein*, 174 So. 2d 600 (Fla. 3rd DCA 1965); choosing to start a fire without the ability to contain it, and thereby burning down 835 acres of nearby property, *Dept. of Agriculture and Consumer Services v. Shulter Ltd. Partnership* 139 So. 3d 914 (Fla. 1st DCA 2014). In the present case, Plaintiff has to have alleged sufficient facts for a jury to find that MRU's behavior was *worse* than driving while asleep, or burning down almost a thousand acres of someone else's land.

Defendant asks the Court to consider the Amended Complaint itself, which describes MRU employee Ms. Sousa as having performed in a manner that cannot be under any reading of the facts construed to mean that she acted within the exacting standard of deliberate indifference to O'Neal's claimed disability.

In May 2022, Sousa responded to Mr. O'Neal's request. She told him he did not need an accommodation for missing one or two classes. ¶ 13. A person who responds to a request absolving the disabled student from scheduling an accommodation has not "consciously chosen not to act"; to the contrary, Ms. Sousa made a determination that Mr. O'Neal could be absolved of his responsibilities if he had only missed one or two classes.

In March 2023, Sousa responded again. She noted she did not keep the necessary forms and directed Mr. O'Neal to obtain them from "clinicals." ¶ 14. Mr. O'Neal may complain that the response or the guidance was not to his satisfaction, but he cannot plausibly claim that Sousa failed to engage him, or otherwise showed deliberate indifference – again, a standard that must rise *above* that of gross negligence.

In April 2023, Sousa received Mr. O'Neal's UNF documentation and processed it. She granted an accommodation: access to a restroom during class. ¶ 15. The accommodation was not to Plaintiff's liking (the Amended Complaint observes that any student could leave class to use the restroom), but Sousa reviewed the documentation, made a judgment about what accommodation was warranted, and implemented what she concluded was appropriate. The Amended Complaint attempts to bridge this gap by attaching the phrase "consciously chose not to act" to facts that describe a person who acted repeatedly. The phrase does not transform the facts; the facts as pleaded refute the gloss Plaintiff appends to the situation.

## VII.    THE COMPARATOR ALLEGATION IS CONCLUSORY

The Amended Complaint adds, at paragraph 21, an allegation "upon information and belief" that MRU "routinely permitted non-disabled students who missed quizzes or examinations for non-medical reasons to make up such assessments promptly." It names no student who was treated better. It identifies no specific instance of MRU having made the alleged allowances.

ADA and discrimination caselaw often refers to such a benchmark of comparison in discrimination cases as a 'comparator', so this motion adopts the term. The Eleventh Circuit requires that plaintiffs demonstrate they and their proffered comparators be "similarly situated in all material respects." *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1218 (11th Cir. 2019) (en banc).  Plaintiff was required to have alleged how he and similarly situated students "engaged in the same basic conduct", were "subject to the same… policy", were "under the jurisdiction of the same supervisor", or shared "the plaintiff's employment or disciplinary history". *Lewis* 918 F.3d at 1226.  Mere allegations that a plaintiff has suffered discriminatory treatment without some sort of standard of comparison are meaningless, and allegations that are "speculative at best and conclusory at worst" should not survive a motion to dismiss. *Cardwell v. Auburn Univ. Montgomery*, 941 F. Supp. 2d 1322, 1333 (M.D. Ala. 2013). In *Cardwell*, the motion to dismiss was granted in part because while the plaintiff filed "over two pages of factual allegations of disparate treatment", her allegations simply begged the question, and failed to specify the details of a similarly situated comparator. 941 F. Supp 2d at 1333.

The only factual basis offered is the observation that MRU and Professor Suarez "had full discretion to schedule make-up assessments and did so for other students in the ordinary course of instruction." That is, the Amended Complaint could only allege, and even that without any actual factual basis, that makeup exams occur; Mr. O'Neal could not find a way to allege that non-

17

disabled students received those accommodations on terms any more favorable than those he received for himself.

## CONCLUSION

The Amended Complaint asserts three claims. Count I invokes a statute that authorizes only injunctive relief, sought by a plaintiff who failed to plead sufficient facts to grant this Court subject-matter jurisdiction over the controversy. Count II invokes a statute that requires that Defendant's alleged discrimination be the sole causation of Plaintiff's losing his position, but Plaintiff pleads a factual narrative that supplies multiple intervening non-discriminatory causes of dismissal from the program. Count II must also have pleaded sufficient facts to form a plausible predicate for a suit that would hold the Defendant liable under the standard of 'deliberate indifference', a standard higher than that of gross negligence; yet, the Amended Complaint describes multiple instances of MRU employees attempting to accommodate Plaintiff, and cannot be read, even in the light most conciliatory to Mr. O'Neal, as a description of conduct so culpable as to exceed the standard for gross negligence. Count III invokes a contract not one of whose provisions is plausibly cited, and whose scope Plaintiff defines exclusively by the school's reference on its website to pre-existing statutory duties.

Across all three counts, the Amended Complaint seeks punitive damages that no applicable statute or common-law doctrine authorizes. Under Count I, it seeks compensatory and emotional-distress damages that Title III withholds from private plaintiffs. Under Count III, it seeks emotional-distress damages that Florida contract law does not permit.

The Amended Complaint was crafted to repair the deficiencies identified in MRU's initial Motion to Dismiss. Mr. O'Neal has now had two opportunities to state his claims. The original

Complaint was deficient. The Amended Complaint was filed with knowledge of those deficiencies and with the benefit of MRU's initial Motion identifying them in detail. It fails to cure them.

MRU respectfully requests that this Court dismiss all three Counts, and dismiss the present cause entirely.

Dated: March 30, 2026

Respectfully submitted,

*/s/ Robert A. O'Donnell*
Robert A. O'Donnell
Florida Bar No. 1011567
Sonia E. O'Donnell
Florida Bar No. 172538
O'Donnell Christopher LLP
700 S. Royal Poinciana Blvd., Ste. 705
Miami Springs, FL 33166
Telephone: 305-640-8958
*rodonnell@odonnellchristopher.com*
*sodonnell@odonnellchristopher.com*
**Counsel for Defendant**
**Miami Regional University**

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2026, a true and correct copy of the foregoing was served via CM/ECF to all parties designated to receive electronic filings in this case.

*/s/ Robert A. O'Donnell*
Robert A. O'Donnell

19