**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**KRISTOFER O'NEAL,**

**Plaintiff,** **CASE NO.: 1:25-CV-25143-JB**

**v.**

**MANAGEMENT RESOURCES INC., D/B/A MIAMI REGIONAL UNIVERSITY,**

**Defendant.**
______________________________________/

**SECOND AMENDED COMPLAINT AND JURY DEMAND**

COMES NOW, Plaintiff, KRISTOFER O'NEAL (hereafter "Mr. O'Neal" or "Plaintiff"), by and through his undersigned attorney, in accordance with the Court's Paperless Order dated August 31, 2026 (ECF No. 30), files this Second Amended Complaint and Jury Demand, and sues Defendant the MANAGEMENT RESOURCES, INC., D/B/A MIAMI REGIONAL UNIVERSITY, and in support thereof, avers as follows:

**NATURE OF THE ACTION**

1. This case is brought under the Americans with Disabilities Act ("ADA"), codified at 42 U.S.C. § 12101, *et seq***.** and Section 504 of the Rehabilitation Act of 1973 (the "Rehab Act").

2. Plaintiff Kristofer O'Neal struggles with a disability, namely Crohn's disease.

3. After notifying Defendant, Miami Regional University ("MRU"), of his disability and requesting reasonable accommodation therefore to help him make up class work missed (in other words, by requesting a flexible attendance accommodation both in clinical and

didactic classes) due to Crohn's disease flare-ups, MRU not only failed to grant the requested accommodation, but unjustifiably added additional stress to his final exam preparations by arbitrarily scheduling two make-up quizzes very late in the semester just prior to final exam time, causing him to fail the make-up quizzes. These failed make-up quizzes in turn resulted in Mr. O'Neal failing the class which MRU then used to improperly dismiss him from the Nursing Program. While having make-up quizzes be postponed until near the end of the semester could be an advantage for a non-disabled student who knows they will be available and able to prepare for such a quiz, this would not necessarily hold true for someone like the Plaintiff with an episodic and unpredictable disability such as Crohn's disease. The purpose of O'Neal's requested accommodation here (make-up quizzes to be scheduled on a mutually agreed upon date and time) was to allow him to make up missed quizzes or exams within a reasonable period rather than having them accumulate until the end of the semester. The concern with postponing the make-up quizzes was that there was no way to know whether O'Neal would be experiencing another Crohn's flare up by the time the make-ups were scheduled. Certainly, having an exam at the end of the semester is not inherently disadvantageous for every student. Rather, the issue is whether postponing disability-related make-up exams until the end of the semester was a reasonable accommodation for someone whose disability could unpredictably interfere with attendance and testing. If his Crohn's flared again at the time of the make-up quizzes, O'Neal could potentially be required to deal with the same problem all over again, except now with the make-up exams accumulated concurrent to his regularly scheduled exams.

4. In so doing, the Defendant violated both the ADA and Section 504 of the Rehab Act, causing the damages alleged herein.

## PARTIES

5. At all times relevant, Plaintiff, KRISTOFER O'NEAL, (hereafter Mr. O'Neal" or "Plaintiff") was an adult resident citizen residing in Boynton Beach, Florida.

At all times relevant hereto, Defendant MANAGEMENT RESOURCES INC., D/B/A MIAMI REGIONAL UNIVERSITY (hereafter "MRU") is a private postsecondary educational institution with the capacity to sue and be sued. Its offices are located in Miami, Florida. Defendant can be served with summons by serving its President and CEO, Ophelia Sanchez, at 700 S Royal Poinciana Blvd #100, Miami Springs, FL 33166.

## VENUE AND JURISDICTION

6. Venue is proper in the Southern District of Florida, pursuant to 28 U.S.C. §§ 1391(b)(1) & (b)(2), as, upon information and belief, all Defendants maintained their principal office in, or were residents of, the State of Florida at the time of the acts and occurrences complained of herein.

7. The Court has subject-matter jurisdiction over the Plaintiff's federal law claims pursuant to 28 U.S.C. §§ 1331.

8. This Court also has supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367(a), as such claims are so closely related to Plaintiff's federal claims that they form part of the same case or controversy and arise out of a common nucleus of operative fact.

## GENERAL FACTUAL ALLEGATIONS

9. Plaintiff re-incorporates all prior factual allegations as if fully set out below.

10. At all times relevant hereto, Plaintiff Kristofer O'Neal ("Plaintiff" or "Mr. O'Neal") was a full-time student at MRU's School of Nursing working toward achieving his MSN RN degree. After graduating from MRU, Mr. O'Neal had planned to follow an educational path to become a Certified Registered Nurse Anesthetist (CRNA) by attending more classes at another nursing school.

11. Mr. O'Neal has a disability. He suffers from Crohn's disease which tends to flare up and interfere with his studies occasionally, but particularly and with increasing severity during periods of mounting stress.

12. On May 31, 2022, Mr. O'Neal informed MRU's ADA officer, Mitsy Sousa, that he needed accommodations for his disability because he expected to miss one or two classes in one of his courses. He also alerted Ms. Sousa to the likelihood of him requiring a colonoscopy soon and asked if his doctor needed to "fill anything out." Instead of accepting his request for reasonable accommodation (flexible attendance), or at least providing a form for his medical care provider to fill out to substantiate this request, Ms. Sousa informed him he did not need an accommodation for missing only one or two classes and did not respond at all to O'Neal's question about his doctor providing a note. Ms. Sousa added, "Your faculty should be flexible with you if you require a medical day. However, should you need additional days due to your condition, then yes, we can work on an accommodation for you." However, this last promise was never followed through with.

13. On March 31, 2023, Mr. O'Neal emailed Mitsy Sousa again to request the forms his medical specialist needed to fill out so he could properly apply for accommodations for his disability. Mr. O'Neal wanted to "…have a blanket excused absence in case I need it." In essence, he was requesting a flexible attendance accommodation. Although this e-mail specifically dealt with clinicals, Mr. O'Neal made clear in his next e-mail that he needed flexible attendance for both clinicals and didactic classes. In her response e-mail of Aril 2, 2023, Ms. Sousa admitted that she, the university's Vice

President of Human Resources & Public Relations and the designated ADA Officer for MRU, did not have the necessary forms and advised him to get the forms from "clinicals."

14. On April 5, 2023, Mr. O'Neal emailed Sousa the form his medical specialist had filled out in 2016 for his prior school, the University of North Florida (UNF). In Block 9 of this form dated 1/5/2016 for UNF (recommendations regarding academic accommodations), the doctor wrote: "Frequent Bathroom breaks due to diarrhea which is common in pts w/ Crohn's, Flexibility on assignment due dates due to possibly missed school resulting from doctor visits, testing, or hospitalization. Flexibility on testing/need for make up exams due to missed school resulting from illness or hospitalization." By submitting this doctor's note form to Ms. Sousa, Mr. O'Neal was effectively now requesting from MRU all of the accommodations listed by his doctor on the form as recommendations. The reasonable accommodations ultimately granted Mr. O'Neal by UNF included flexible attendance of classes, time and a half the normal time for exams, quizzes, and assignments, a note-taker for lectures, and make-up quizzes to be scheduled at mutually agreed upon date and time. At this point, MRU, through Ms. Sousa, had all the information necessary to either grant or deny Mr. O'Neal's request. However, the only item that Ms. Sousa listed as needing accommodation on follow up forms was access to a restroom during class and nothing about the flexibility of class attendance or the ability to make up exams and assignments within a reasonable time period. The bathroom accommodation was meaningless as any student could leave class on their own to visit the restroom as needed anyway. Mr. O'Neal only found out that this was the case (not being granted reasonable accommodations for attendance flexibility and making up exams and assignments within a reasonable time) much later on from the appeal board during that process.

15. The doctor's note dated January 15, 2026, that O'Neal forwarded to Ms. Sousa also indicated that "Patient can have all these symptoms [referring to a list of life activities impacted by the

disability]. Severity depends on the extent of patient's flare." In Block 7 for the impact of treatment on the student's academic performance, the doctor noted "Goal of treatment is mucosal healing and avoidance of surgery if possible. Frequent hospitalizations for exacerbations of the disease is common. Frequent monitoring of labs, frequent MR scans, Endoscopy procedures, physician visits will contribute to missed school." In block 8 for situations or conditions that might lead to exacerbations, the doctor indicated, "Crohn's Disease requires lifelong treatment. Symptoms will vary from patient to patient. Environmental factors very from individual to individual. Factors that can [increase] exacerbations are stress, smoking, [increased] animal protein, Omega 3, 6."

16. On November 2, 2023, Mr. O'Neal attempted to address the accommodations issue before the semester concluded by requesting accommodations for his disability for a third time and asked for a meeting with Ms. Sousa. He wrote in this e-mail to Ms. Sousa: "Good evening, Is it possible to come speak with you about the accommodations that I am receiving? I would like some help with my current class that I am in." With this e-mail, Mr. O'Neal was concisely and implicitly reiterating his previous requests for those same accommodations he had been granted at UNF: flexible attendance of classes; time and a half the normal time for exams, quizzes, and assignments; a note-taker for lectures; and make-up quizzes to be scheduled at mutually agreed upon dates and times. O'Neal's intention all along was to meet with Ms. Sousa to verbally discuss and request all four of the main accommodations that he had received at UNF and explain why he needed them now in MRU's nursing program. Unfortunately, he never received a response.

17. In the meantime, on October 3, 2023, Mr. O'Neal informed the instructor of his Obstetrics and Pediatrics course, Professor Carolina Suarez, that he would not be able to make class that day because he felt ill with a flare-up of his Crohn's disease. A quiz was to be given that day, and Mr. O'Neal asked when he could make up the quiz. Professor Suarez did not respond.

18. On October 20, 2023, Mr. O'Neal emailed Professor Suarez that he would again have to miss class due to his disability and that he had not heard back from her regarding the previous quiz. Suarez did not allow Mr. O'Neal to make up the quizzes until the end of the semester (there was a second missed quiz as well). This posed a significant challenge to Plaintiff because it would compound his testing stress during the time when he had to prepare for his final exams in his other classes.

19. On November 28, 2023, Professor Suarez reserved a time for Plaintiff to make up the missed quizzes at the testing center of MRU. She made no attempt to coordinate with O'Neal on whether that was a good date for him for the make-ups.

20. Because of this added stress and lack of time for proper preparation, Mr. O'Neal failed the make-up quizzes. Suarez made no attempt to work with Plaintiff to accommodate his disability.

21. On December 17, 2023, Mr. O'Neal filed a grade appeal regarding Prof. Suarez' class.

22. On December 22, 2023, the appeals committee canceled Plaintiff's appeal.

23. In late-December 2023, the appeals committee allowed Plaintiff to continue his appeal.

24. On January 5, 2024, Plaintiff received an email from the appeals committee denying his appeal for allegedly not following required procedure.

25. On January 8, 2024, Plaintiff replied to the appeals committee questioning the committee's denial of his appeal.

26. On January 11, 2024, the appeals committee informed Plaintiff that his appeal was already closed and that he may appeal their decision to the Office of the Provost.

27. Subsequent to his dismissal from MRU and after his appeal was denied and finalized, Mr. O'Neal made efforts to gain readmission to the MRU School of Nursing. He followed the MRU

board's instructions to be reinstated to the nursing program by sending an e-mail to the Provost. However, Mr. O'Neal never received a response and by then the semester was already well underway. During this process, Mr. O'Neal's disability documentation was never considered. It remains Mr. O'Neal's intent to return to MRU's School of Nursing to continue pursuing his MSN RN degree. However, MRU's policies and refusal to consider and reasonably accommodate his disability is preventing this from happening.

## COUNT I
## DISCRIMINATION BASED ON DISABILITY
## (42 U.S. Code § 12182 - Prohibition of Discrimination by Public Accommodations)

28. Subsection (a) of 42 U.S. Code § 12182 provides the following:

> (a)General rule
>
> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

29. Subsection (b)(2)(A) provides in relevant part that:

> (A)Discrimination
>
> For purposes of subsection (a), discrimination includes—
>
> (i)the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered;

30. At all times relevant, Defendant MRU was a private university that accepts federal funding.

31. At all times relevant, MRU displayed the following legend on its website:

**EQUAL OPPORTUNITY AND NONDISCRIMINATION**

Miami Regional University is committed to providing a high-quality education to all students without regard to race, religion, color, gender, sexual orientation, genetic information, age, disability, national origin, veteran status, marital status or political affiliation. The University promotes an open and diverse culture, and will not tolerate discrimination against or harassment of any individual or group. Students, faculty, and staff should be afforded equal opportunity to participate in University programs and use University facilities free of discrimination or harassment. This policy applies to all University students, faculty, staff, and other employees of Miami Regional University, and to any person or group acting within or on behalf of the University.

32. By denying Plaintiff the accommodations he requested and was entitled to, all named Defendants, acting individually or in combination with each other, imposed or applied eligibility criteria that screened or tended to screen out an individual with a disability, to wit, the Plaintiff, from fully and equally enjoying the College's goods, services, facilities, privileges, advantages, or accommodations.

33. By virtue of holding itself out and operating as a postsecondary educational institution, Defendant MRU comes within the definition of a "public accommodation" pursuant to 42 U.S.C. § 12181(7)(J).

34. As a public accommodation, MRU is subject to the antidiscrimination provisions contained within the Americans with Disabilities Act as codified in Chapter 126 of Title 42, United States Code.

35. Plaintiff had been diagnosed with Crohn's disease, was suffering from Crohn's disease, and provided Defendants with all necessary information to enable MRU to provide him with the accommodations Plaintiff requested. These conditions, alone and in combination, interfered with Plaintiff's ability to learn and thus constitute a disability within the meaning of 42 U.S. Code § 12102(1)(A) because they substantially interfered with a major life activity of his, to wit, his

ability to study and attend required classes. *See* 42 U.S. Code § 12102(2)(A). In Plaintiff's case here, the major life activities impacted and substantially limited by his diagnosed condition include "learning, reading, concentrating, thinking, communicating, and working." *Id.*

36. Pursuant to 42 U.S. Code § 12102(4)(A), the term "disability" shall be construed "in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." *Id.*

37. The Defendants herein were first made aware of Plaintiff's conditions on May 31, 2022, when Plaintiff emailed ADA Officer Mitsy Sousa concerning his disability and requested a reasonable accommodation.

38. The Defendants were further made aware of Plaintiff's disability on March 31, 2023 and November 2, 2023, all to no avail.

39. By failing to provide the requested accommodations, Defendant MRU discriminated against Plaintiff on the basis of his disability by subjecting him "directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity … to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations" of the College.

40. By failing to grant the accommodation of note-taker for lecture classes, MRU discriminated against O'Neal by undermining his ability to get the most out of those lecture classes that he was able to attend. There were times when O'Neal attended class while experiencing a Crohn's flare rather than missing the class. When that happened, his symptoms impaired his ability to take complete notes and concentrate on the instruction. O'Neal also missed instructional material on the days of the assessments he missed. This was particularly significant because the material the professor taught and expected the students to know was not necessarily the same as what could simply be recovered from the textbook. The Power Point presentations often did not match the

textbook and referenced items that did not exist. Having the note-taker accommodation would have significantly if not entirely alleviated these issues for the Plaintiff.

41. The denial of the note-taker accommodation impaired O'Neal's capacity to learn the lecture material because of his Crohn's Disease. The denial of the accommodation of make-up tests to be conducted on a mutually agreed upon date and time increased O'Neal's stress levels due to him being jammed up at the end of the semester with an excessive amount of tests and thereby worsened his Crohn's symptoms. The denial of the flexible attendance accommodation forced O'Neal to deal with the administration regarding missed classes and tests on an ad hoc basis rather than having the peace of mind of knowing that this accommodation was already in place. The denial of the time-and-a-half accommodation for assignments and tests meant that any time that O'Neal lost while dealing with his Crohn's came directly off of his academic time and was not compensated for.

42. The Defendants' aforementioned discrimination was the direct and proximate cause of Plaintiff's inability to pass the make-up quizzes in Professor Suarez' class and also impaired O'Neal's ability to learn the material presented by lecture, and was thereby the cause of his dismissal from the program.

## COUNT II
## DISCRIMINATION, VIOLATING SECTION 504
## (29 U.S. Code § 701, et seq. - Prohibition of Discrimination by Recipients of Federal Funding)

43. Plaintiff incorporates by references all allegations above as if fully stated herein.

44. At all times relevant hereto, MRU was a "program or activity receiving Federal financial assistance" within the meaning of 29 U.S.C. Section 794(b)(2)(A). The College was therefore subject to Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. Sections 701 *et seq*.)

45. Plaintiff informed the College of his disability and requested reasonable accommodation for his Crohn's disease.

46. MRU refused to provide the accommodation requested.

47. The accommodation requested would not have imposed a substantial (or even a minimal) financial or other burden on the College.

48. At all times relevant hereto, Plaintiff was a qualified individual with a disability as defined in 29 U.S.C. Section 705(20)(B) and further defined in 42 U.S.C. Section 12102(1). Had Mr. O'Neal been granted the requested reasonable accommodations for his disability (Crohn's disease), he would certainly have excelled academically, not failed the quizzes that he did, and not been dismissed from MRU. The failure of MRU to follow through on Mr. O'Neal's requested reasonable accommodations had a catastrophic cascading and spiraling impact on his ability to satisfactorily complete the MRU School of Nursing curriculum. The fewer reasonable accommodations he received, the worse Mr. O'Neal did academically, and the worse he performed academically, the more he stressed out and had anxiety. In turn, the more he stressed out, the worse he did academically, and so on.

49. Specifically, and as discussed in Paragraph 41 above, the denial of the note-taker accommodation impaired O'Neal's capacity to learn the lecture material because of his Crohn's. The denial of the accommodation of make-up tests to be conducted on a mutually agreed upon date and time increased O'Neal's stress levels due to him being jammed up at the end of the semester with an excessive amount of tests and thereby worsened his Crohn's symptoms. The denial of the flexible attendance accommodation forced O'Neal to deal with missed classes and tests on an ad hoc basis rather than having the peace of mind of knowing that this accommodation was already in place. The denial of the time-and-a-half accommodation for

assignments and tests meant that any time that O'Neal lost while dealing with his Crohn's came directly off of his academic time and was not compensated for.

50. By refusing to accommodate Plaintiff after having been notified of Plaintiff's disability, MRU discriminated against Plaintiff based solely upon Plaintiff's known disability in violation of 29 U.S.C. Section 794(a). The Plaintiff's academic struggles outlined above in the factual basis paragraphs were the direct and foreseeable result of MRU's refusal to grant Mr. O'Neal the reasonable accommodations that he requested. Had MRU followed through and granted these reasonable accommodations in a timely manner, there would have been no academic struggles. This is corroborated by the fact that early on in his MRU career, before his Crohn's flared up, Mr. O'Neal was able to perform academically at least at a satisfactory level.

51. In so doing, the College excluded Plaintiff from the participation in, denied him the benefits of, and subjected Plaintiff to discrimination under, a program or activity receiving Federal financial assistance in violation of that statute. This demonstrates a pattern of deliberate indifference on the part of MRU. It was an act of deliberate indifference to grant the Plaintiff only the paltry and meaningless RA of being able to access the restroom during class (which even non-disabled students had the ability to do to begin with). Another example of MRU's deliberate indifference to his disability was their refusal to consider Mr. O'Neal's disability when it never responded to Mr. O'Neal's efforts to obtain readmission to the MRU nursing school.

52. Plaintiff hereby sues for compensatory damages and attorney's fees as provided by 29 U.S. Code § 794a.

**COUNT III:**
**BREACH OF CONTRACT**

53. Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

54. Plaintiff Kristofer O'Neal entered into a contractual relationship with Defendant MRU for the provision of educational services for him wherein Plaintiff agreed to pay required tuition fees and Defendant agreed to provide the instruction, testing, facilities, and programs and accommodations required for Plaintiff to earn and acquire his desired nursing degree. This relationship was memorialized through written enrollment agreements, tuition contracts, and school communications, and was further supported by implied promises arising from Defendant's stated mission, policies, and representations to students and prospective students. As with most institutions of higher learning, this contract was not a traditional contract such as might be used between two businesses or merchants exchanging good and services for payment. Here, the contract took the form of MRU setting forth its course offerings, degree programs, tuition requirements, and policies and procedures on the one hand, and Mr. O'Neal taking all of that into consideration when making his decision to attend MRU and then submitting his application for admission on the other. Once MRU approved Mr. O'Neal's application for admission and he in turn notified MRU that he did in fact intend to start attending classes in May 2022, a contract was effectuated.

55. Defendant expressly and implicitly represented that it would provide educational services in accordance with applicable laws, professional standards, and its own stated commitment to supporting the academic, emotional, and developmental needs of its students.

56. MRU makes clear on its website that "MRU complies with the Americans with Disabilities

Act of 1990 (the "ADA"), the Rehabilitation Act of 1973, and other applicable disability discrimination laws. MRU is committed to providing reasonable accommodation(s) to qualified disabled applicants and learners in MRU programs and activities as required by applicable law." It further holds itself out to prospective and current students as a willing and committed observer and follower of all applicable federal and state disability law: "Miami Regional University ("MRU") is committed to providing equal access of its academic programs to all qualified students. MRU provides support, resources and academic accommodations in accordance with federal and state statutes and regulations to MRU students. This policy establishes guidelines for qualified current and prospective students with disabilities to seek academic accommodations at MRU." https://mru.edu/disability-services. Thus, once a prospective student takes MRU up on its acceptance of that student into the next class at the nursing school (as Mr. O'Neal did), this policy statement and University position becomes an implicit part of the contract between student and university.

57. Plaintiff reasonably relied on these representations in enrolling himself in nursing school, paying tuition and fees, and entrusting Defendant with his education.

58. Defendant breached this contract by:

a. Failing to implement reasonable accommodations for Mr. O'Neal despite his documented disabilities made to the applicable MRU department. The reasonable accommodations that should have been granted but were not included time-and-a-half for assignments and tests; note-taker for lecture classes; make-up tests to be scheduled at a mutually agreed upon date and time; and flexible attendance.

b. Repeatedly making what reasonable accommodations it did make in a half-

hearted and dilatory manner.

c. Failing to consider Plaintiff's disability in his efforts to gain readmission following his dismissal.

59. As a direct and foreseeable result of Defendant's breach, Plaintiff was deprived of the educational services for which he paid.

60. Defendant's failure to uphold its contractual obligations caused substantial financial harm, emotional distress, and educational instability for the Plaintiff.

61. Plaintiff is entitled to compensatory damages for breach of contract, including restitution of tuition paid, consequential damages, and any other relief the Court deems just and proper.

## ATTORNEY'S FEES AND COSTS

62. As a direct result of the actions of the defendants heretofore mentioned, Plaintiff was forced to retain the undersigned counsel and expend attorney's fees, litigation expenses, and costs of court. Pursuant to 28 CFR Part 36, Subpart E, § 36.505, Plaintiff hereby requests that the Court order Defendants to pay Plaintiff's attorney's fees and costs of court.

## PRAYER FOR RELIEF

**WHEREFORE,** for the foregoing reasons and pursuant to the causes of action stated above, Plaintiff KRISTOFER O'NEAL respectfully request that this Court enter judgment in his favor and against Defendant MANAGEMENT RESOURCES, INC., D/B/A MIAMI REGIONAL UNIVERSITY, and award the following relief:

a. General damages for emotional distress, pain and suffering, and loss of enjoyment of life;

b. Compensatory damages for educational disruption, financial loss, and deterioration of mental health;

c. Restitution of tuition and fees paid for educational services not properly delivered;

d. Punitive damages for intentional and reckless disregard of Plaintiff's federally and state-protected rights;

e. Injunctive relief requiring Defendant to:

    i. Implement appropriate accommodations for students with documented physical disabilities;

    ii. Conduct mandatory training for faculty and staff on ADA, Section 504, FERPA, and Florida disability law;

    iii. Reform its disciplinary and accommodation procedures to ensure compliance with federal and state law;

    iv. Readmit the Plaintiff to MRU's School of Nursing program at the point where he was dismissed without penalty or retaliation.

f. Reasonable attorney's fees and costs of suit pursuant to applicable federal and state statutes, including 42 U.S.C. § 1988 and 29 U.S.C. § 794a(b);

g. Pre- and post-judgment interest as permitted by law;

h. Any other relief the Court deems just, proper, and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action of all issues so triable.

## CERTIFICATION

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Respectfully Submitted,
**LLG NATIONAL LAW GROUP**



Robert S. Mactavish, Esquire
Florida Bar No. 0596388
Phoenix Corporate Tower
3003 N. Central Avenue
Suite 685
Phoenix, AZ 85012
P: 575-517-6542
*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 11, 2026, I electronically filed the foregoing Second Amended Complaint with Jury Demand with the Clerk of Court using the CM/ECF system, which will automatically serve a copy on counsel for the Defendant, Robert O'Donnell, Esquire.

Robert S. Mactavish, Esquire