**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No. 1:25-cv-25143-JB

KRISTOFER O'NEAL,

Plaintiff,

v.

MANAGEMENT RESOURCES INC.,
D/B/A MIAMI REGIONAL UNIVERSITY,

Defendant.
_______________________________________/

**DEFENDANT MIAMI REGIONAL UNIVERSITY'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Defendant Management Resources Inc., d/b/a Miami Regional University ("MRU"), moves under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the Second Amended Complaint (ECF No. 31) (the "SAC") of Plaintiff Kristofer O'Neal, and states:

## PRELIMINARY STATEMENT

On August 28, 2026, the Court dismissed the Amended Complaint from the bench and instructed the Plaintiff concerning his next pleading: he had to "plead what he needed and why he needed it," plead "what it is that the university did or didn't do, and why that was unreasonable," and "tie the accommodation, the refusal, and the injury together." (ECF No. 32, p. 12/lines 10-21). The Court correctly critiqued the Amended Complaint as describing a student "allowed to retake the quiz without penalty," (ECF No. 32, p. 5/lines 23-24), and found the accommodation "de facto given." (ECF No. 32, p. 6/lines 8-10). The Court further reasoned, correctly, that "to suggest that the fact that he was given the opportunity to take it at a time that he felt was inconvenient to him,

that can't be a failure to accommodation." (ECF No. 32, p. 6/lines 14-16). Indeed it cannot, yet that is the essence of Plaintiff's now third attempt, his Second Amended Complaint.

Plaintiff's Second Amended Complaint fails to remedy the defects of its predecessors. He tells the same story as before: a student who missed quizzes, asked to retake them, was allowed to retake them, underperformed on the quizzes, and consequently failed his course. Those events give rise to no claim under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, or the law of contract, and a fourth pleading will not change that. The Court dismissed the Amended Complaint without prejudice because Plaintiff had amended once as of right and no pleading of his had yet suffered a judicial dismissal. (ECF No. 32, p. 3/lines 7-11). That reason no longer holds. Plaintiff amended with the Court's instructions in hand, (ECF No. 32, p. 3/lines 1-2; p. 8/lines 10-11), and cured none of the defects the Court named.

## LEGAL STANDARD

A complaint must plead facts that make the claim plausible, not labels that recite its elements. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts well-pleaded facts as true and disregards "a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A plaintiff who seeks an injunction must also plead facts showing a real and immediate threat of future injury. *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1229–30 (11th Cir. 2021); *Smith v. Miorelli*, 93 F.4th 1206, 1212 (11th Cir. 2024).

## ARGUMENT

### I. COUNT I PLEADS NO REAL AND IMMEDIATE THREAT OF FUTURE INJURY

Title III of the ADA gives a private plaintiff one remedy: an injunction. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1329 (11th Cir. 2013). Because an injunction governs the

future, a plaintiff has standing to seek one only if he shows a real and immediate threat that the defendant will injure him again. *Kennedy*, 998 F.3d at 1229–30. Past exposure to unlawful conduct does not supply that threat. *J W by & through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1264 (11th Cir. 2018). Neither does an injury that can occur only if a series of other contingent circumstances first happen to come to pass. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414–15 (2013).

The Amended Complaint pleaded that Mr. O'Neal had reviewed MRU's readmission procedures, prepared the documentation required for reinstatement, and had an intent to return that was "concrete, specific, and ongoing." ECF No. 11 ¶29. The Court correctly dismissed that Amended Complaint, in part because Plaintiff never plead it sufficient facts to demonstrate that he indeed had a concrete and specific intent to return to MRU. The Second Amended Complaint fails for the same reason. It alleges that after O'Neal's dismissal he sent one email to the Provost, received no answer, and found that "by then the semester was already well underway." SAC ¶27. It alleges that his intent to return "remains," but fails to plead any actual facts to evidence that intent. *Id.* It alleges that "MRU's policies and refusal to consider and reasonably accommodate his disability" prevent his return, but names no policy and describes no refusal.[1]

[1] It is important, though perhaps not necessary to reach here, to understand just how grave an intrusion into academic prerogatives the Plaintiff's many complaints require. Prayer paragraphs (e)(i) through (e)(iii) ask the Court to instruct MRU how to run its university, ordering MRU to implement accommodations "for students with documented physical disabilities," to train its faculty in a manner of O'Neal's choosing, and to reform its procedures to O'Neal's tastes. Yet Mr. O'Neal is no longer a student at MRU. A plaintiff must demonstrate standing for each form of relief he seeks, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021), and a former student has no stake in how a university trains the faculty who will teach others. Prayer paragraph (e)(iv) asks the Court to readmit him "at the point where he was dismissed without penalty." That asks the Court to reverse an academic dismissal for a failed course. Federal courts "should show great respect for the faculty's professional judgment" and "may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or

More to the point, Mr. O'Neal cannot show an imminent threat of injury. In order for MRU ever to fail to accommodate Mr. O'Neal, he must pass through a great series of contingent steps. Initially, he must apply for readmission, which none of his three complaints allege he has ever done. MRU must readmit him, a discretionary act it has neither taken nor refused, and which the SAC does not plausibly allege MRU will undertake. O'Neal must then enroll in a term in which a class that could possibly be an issue for his disability is being offered. Then he must be scheduled in a such a class where his Crohn's disease could be a problem (because, for example, classes with untimed take-home examinations would presumably not be an issue). At that point, O'Neal still will not be in imminent danger of an injury. In order to suffer an injury under Title III, after all the foregoing contingent and speculative predicates have been met, O'Neal must then be able to show that were he to suffer a Crohn's incident during an upcoming assessment, MRU would be imminently likely to deny him an accommodation. Only then would O'Neal have standing under Title III.

The Eleventh Circuit demands that for a plaintiff to show standing, he must do more than simply allege his intentions to act without any description of concrete plans. *See Kennedy*, 998 F.3d at 1234–35 (generalized intent to return sometime in the future is insufficient). The Supreme Court similarly demands that a plaintiff plead more than a mere speculative chain of possibilities to show the imminent injury necessary for him to have standing. *Clapper*, 568 U.S. at 414. This plaintiff has not even begun to show the necessary standing for a Title III action. The Court should dismiss Count I for lack of jurisdiction. *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).

---

committee responsible did not actually exercise professional judgment." *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985).

## II. COUNT II FAILS TO CURE THE DEFECTS THE COURT IDENTIFIED

Count II sues under Section 504 of the Rehabilitation Act. Mr. O'Neal alleges that Crohn's disease disables him, SAC ¶2, that MRU receives federal money, *id.* ¶44, that he told MRU of his disease and asked for accommodation, *id.* ¶45, and that MRU refused to accommodate him, *id.* ¶46. He names four accommodations he claims MRU withheld: a note-taker for lectures, make-up tests set at a mutually agreed date and time, flexible attendance, and time and a half on assignments and tests. *Id.* ¶49. He alleges that the refusal cost him the make-up quizzes, the course, and his place in the nursing program, *id.* ¶¶3, 20, 50, and that MRU acted with deliberate indifference, *id.* ¶51. He demands compensatory damages and attorney's fees under Count II, *id.* ¶52, and demands emotional-distress and punitive damages in his prayer, *id.*, Prayer ¶¶(a), (b), (d).

Section 504 provides that "[n]o otherwise qualified individual with a disability" shall, "solely by reason of her or his disability," be excluded from, denied the benefits of, or be subjected to discrimination under a program receiving federal funds. 29 U.S.C. § 794(a). Mr. O'Neal must plead three sets of facts: that MRU denied him an accommodation his disease required, that he could have met the standards of a nursing program had MRU granted it, and that his disease, and nothing else, cost him his place. Because he seeks damages, Mr. O'Neal also had to plead that an MRU official with authority to correct the denial knew that harm to his federal rights was substantially likely and chose not to act. *See Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 344 (11th Cir. 2012). The Court found the Amended Complaint wanting on each point. The Second Amended Complaint fares no better.

### A. The Pleading Still Describes a University That Accommodated Plaintiff

Mr. O'Neal's latest complaint describes MRU's multiple accommodations offered to the Plaintiff. The SAC alleges that in May 2022, Ms. Sousa from MRU answered Mr. O'Neal's e-

mail, reassuring him that MRU's faculty "should be flexible with you if you require a medical day;" she added that if he needed more days "we can work on an accommodation for you." SAC ¶12. In March 2023 she answered within two days and directed him where to obtain the relevant forms. *Id.* ¶13. In April 2023 she received his physician's form and granted an accommodation. *Id.* ¶14. In November 2023 Professor Suarez reserved time at the testing center for both make-up quizzes, and Mr. O'Neal sat for them. *Id.* ¶¶19–20. In December and January, the appeals committee took up his appeal, closed it, reopened it, and ruled on it. *Id.* ¶¶21–26.

The SAC attests to each of the aforementioned facts. It also appends vague editorializations, dismissing the above accommodations as "paltry and meaningless" or "half-hearted and dilatory." *Id.* ¶¶51, 58(b). But a Court is meant to interrogate the actual facts pleaded, not the modifiers a plaintiff chooses for them. *See Iqbal*, 556 U.S. at 678.

Mr. O'Neal's latest Complaint chooses a slightly different point of sail: MRU perhaps may indeed have granted the accommodations he requested, he claims, but apparently it granted the wrong accommodations. Mr. O'Neal now introduces the accommodations he believes MRU should have provided: time and a half to take an exam, a note-taker during classes,[2] make-ups at "a mutually agreed time," (thus giving the student a veto and the authority to dictate an entire university's schedule), and flexible class attendance. SAC ¶58(a). Unfortunately for Mr. O'Neal,

---

[2] The Court already expressed doubt that a note-taker, "an accommodation for certain learning disabilities," has "anything to do with Crohn's disease." (ECF No. 32, p. 11/lines 15-18). The Second Amended Complaint does not answer the Court's doubts. It pleads no learning disability and no impairment of hearing or writing, and it gives no reason why a gastric disease requires another person to take a student's notes, or why it entitles a student to extra time to finish an examination. As the Court noted, the fact that he received a particular accommodation in his political science class at the University of North Florida "doesn't mean he is entitled to" it at MRU. (ECF No. 32, p. 11/lines 19-24).

**his latest Complaint never pleads that Mr. O'Neal ever asked MRU for those accommodations.**

Instead, his newest Complaint admits what O'Neal's physician actually recommended in 2016 as accommodations tailored to his claimed disability: "Frequent Bathroom breaks," "Flexibility on assignment due dates," and "Flexibility on testing/need for make up exams due to missed school." *Id.* ¶14. O'Neal admits MRU granted the first. *Id.* The SAC pleads no assignment deadline he missed. O'Neal admits he received the third accommodation as well: he rescheduled two make-up examinations, and took them. *Id.* ¶¶19–20. The note-taker and the extended time appear in the SAC only as accommodations "granted Mr. O'Neal by UNF." *Id.* ¶14. No paragraph alleges that he told anyone at MRU that he wanted these accommodations, or that such accommodations would even be acceptable in a nursing program, as opposed to the political science track he followed at the University of North Florida ("UNF").

Plaintiff's counsel conceded the point at the hearing. He admitted the pleading was "not specific enough" about the four accommodations, (ECF No. 32, p. 9/lines 3-4); that Mr. O'Neal meant to "go into detail on those requests" at a meeting that "never occurred," (ECF No. 32, p. 9/lines 20-23); and that MRU "never gave Mr. O'Neal an opportunity to explicitly request" them. (ECF No. 32, p. 10/lines 5-7). He conceded too that Mr. O'Neal never obtained a current medical assessment supporting them; he only "could have." (ECF No. 32, p. 10/lines 1-4). A student who never asked for an accommodation cannot fault the school for withholding it.

Mr. O'Neal's latest salvo claims that by forwarding the physician's form he "was effectively now requesting from MRU all of the accommodations listed by his doctor." *Id.* ¶14. Yet the same SAC admits that MRU met the relevant accommodations his doctor recommended. O'Neal also claims that his email of November 2, 2023 "was concisely and implicitly reiterating"

additional accommodations. *Id.* ¶16. The SAC quotes that email: "Is it possible to come speak with you about the accommodations that I am receiving? I would like some help with my current class that I am in." *Id.* Plaintiff has haled Defendant into federal court to demand payment for having been denied "implicit" (that is, unrequested) accommodations. The statutes require a university to accommodate the limitations of a disability it knows about. They do not require it to guess at accommodations a student received elsewhere and never requested. *See Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 344 (11th Cir. 2012) (liability requires knowledge that harm to a federally protected right is substantially likely, and a failure to act on that knowledge). The SAC pleads on its face that MRU granted the very accommodations O'Neal's physician recommended.

Professor Suarez set the make-up exams for November 28, eight weeks after the first missed quiz. Mr. O'Neal's newest Complaint styles the make-up examination as a failed accommodation, SAC ¶18, neglects to allege that Mr. O'Neal proposed another date, objected to the one set, or told Ms. Sousa that the schedule troubled him. It does not allege that Professor Suarez had authority to correct the timing of the exams. *See Liese*, 701 F.3d at 344. MRU can only be held liable under the Rehabilitation Act if it exhibited deliberate indifference, manifested in a conscious refusal not to act. *Id.* Mr. O'Neal asked for a make-up quiz, Professor Suarez gave him one, and he sat for it eight weeks later. He wrote to Ms. Sousa concerning a clinical class he had missed, and she replied to him that he could make it up at his convenience. Under no plausible reading of O'Neal's latest complaint can it be said that he pleaded sufficient facts to show MRU's deliberate indifference toward his disability.

**B. The Pleading Does Not Show That O'Neal Could Pass a Nursing Curriculum**

Section 504 protects an "otherwise qualified individual with a disability," 29 U.S.C. § 794(a), which in a college program means a student who "meets the academic and technical

standards requisite to admission or participation." 34 C.F.R. § 104.3(l)(3). The Eleventh Circuit has held that "the law does not require medical schools to retain students who cannot perform the coursework," *Nehme v. Fla. Int'l Univ. Bd. of Trs.*, 121 F.4th 1379, 1384 (11th Cir. 2024), and the Supreme Court has held that a nursing program need not lower its standards to accommodate a disability. *Southeastern Cmty. Coll. v. Davis*, 442 U.S. 397, 413 (1979).

The Court during a hearing on Plaintiff's penultimate lawsuit against MRU asked what facts Plaintiff pleaded in his Amended Complaint to suggest he was capable of finishing a nursing program. The Court observed that success in political science is not necessarily correlated with success in nursing. Plaintiff's next attempt, his Second Amended Complaint, provides no answer. Without pleading any fact to justify the claim, Plaintiff asserts that were he to receive extra time in testing, an appointed note-taker, and the chance to reschedule tests at his convenience, "he would certainly have excelled academically." SAC ¶48. He gives no reason to believe this improbable assertion. Then he kept the same claim, unsubstantiated by sufficient alleged facts, this Court found questionable on the last Complaint: "early on in his MRU career, before his Crohn's flared up, Mr. O'Neal was able to perform academically at least at a satisfactory level." *Id.* ¶50.

The SAC identifies no facts supporting Plaintiff's assertion that he would have been successful in the nursing program even should he have asked (contrary to fact) for further accommodations and been granted them. The SAC names no course standard, no clinical competency, and no grade threshold that Plaintiff could pass; neither does it plead any facts that if taken as true would lead to the conclusion that Plaintiff could meet those standards. It does not allege what a note-taker or extended time would have changed about a quiz he sat for after eight weeks' notice and failed. *Id.* ¶20. The pleading concedes that O'Neal performed poorly in both accommodated make-ups, failed the course, and was dismissed for it. *Id.* ¶¶3, 20. A student who

received an accommodation and still could not meet the program's requirements is not a qualified individual, *Nehme*, 121 F.4th at 1384; *Cooney v. Barry Sch. of Law*, 720 F. App'x 571, 573 (11th Cir. 2018), and a complaint that asserts only the conclusion the Plaintiff must prove, without pleading the facts necessary to prove the conclusion, has not stated a claim upon which relief may be granted. *Iqbal*, 556 U.S. at 678.

**C. The Pleading Still Describes Stress, Not a Flare of Crohn's Disease**

The Court observed that Mr. O'Neal pleads Crohn's disease, not an anxiety disorder, but that the injury the former Amended Complaint described was stress. The present SAC responds by alleging that stress can worsen Crohn's, SAC ¶11, and by quoting a physician's note to the same effect, *id.* ¶15. MRU would contest those allegations were the suit to move beyond the pleadings; in a motion to dismiss, MRU will for the moment accept those allegations as true. It is no matter: the SAC never alleges that such a stress-induced flare of Plaintiff's alleged Crohn's disease *actually occurred* during any make-up exam.

Paragraph 3 of the SAC poses a stress-induced Crohn's flare as a hypothesis: "If his Crohn's flared again at the time of the make-up quizzes," the delay *would have* compounded his difficulty. Perhaps it would have, and perhaps not, but paragraphs 19 and 20 report what *did* in fact happen on November 28. The SAC does not allege that Plaintiff's stress caused a flare of his Crohn's disease. Instead, the SAC pleads that O'Neal failed "because of this added stress and lack of time for proper preparation." *Id.* ¶20. Lack of time, eight weeks after the first missed quiz, is not a symptom of Crohn's disease. Stress is not a disability pleaded in the SAC; the only disability Plaintiff pleads is Crohn's. *Id.* ¶¶2, 35. Paragraph 41's assertion that the schedule "worsened his Crohn's symptoms" names no symptom, no date, and no details, and no reason to think his

symptoms in any way impaired his test performance. The pleading elsewhere concedes that he sat for and completed both examinations. *Id.* ¶20.

Plaintiff's counsel during oral argument for the Amended Complaint conceded that Mr. O'Neal "didn't have stress or anxiety to a diagnosable level"; he had stress "like, you know, most people in the world do." (ECF No. 32, p. 10/line 23-p. 11/line 1). The Court answered that counsel had not pleaded any link between that stress and Crohn's, (ECF No. 32, p. 11/lines 13-14), and that no claim can rest on the proposition that "School stressed me out; and, therefore, if I had these accommodations, I wouldn't have had this stress." (ECF No. 32, p. 12/lines 15-18). The SAC pleads the link in general terms, SAC ¶¶11, 15, but never pleads the fact that matters: a flare on the date of the accommodated make-up quiz.

The ADA and the Rehabilitation Act require a school to accommodate a student for his *stated disability*. They do not make every stressful examination schedule an act of discrimination against a student whose disease is gastric. The SAC by its own text alleges that MRU answered Mr. O'Neal, granted the accommodations his physician recommended, and gave him the make-up quizzes he asked for. He pleads no fact showing he could meet a nursing program's standards. He pleads that stress and want of preparation made him fail, but stress is not the disability he pleads. MRU asks the Court to dismiss Count II with prejudice for having failed to state a claim under Section 504 of the Rehabilitation Act.

## III. COUNT III IDENTIFIES NO CONTRACT TERM THAT MRU BREACHED

Count III sues for breach of contract under Florida law. Mr. O'Neal alleges that MRU set out its programs, tuition, and policies, that he applied and enrolled in reliance on them, and that MRU breached a contract formed when MRU admitted him and he chose to attend in May 2022. SAC ¶54. He alleges that MRU's published statements about disability law became terms of that

contract, *id.* ¶56, and that MRU broke them in three ways: by failing to grant the four accommodations he now names (though never requested), *id.* ¶58(a); by granting the accommodations it did grant in a "half-hearted and dilatory manner," *id.* ¶58(b); and by failing to consider his disability if he were to seek readmission, *id.* ¶58(c). He demands restitution of tuition, consequential damages, and damages for emotional distress. *Id.* ¶¶60–61; Prayer ¶¶(a), (c).

Count III thus restates Count II in the language of contract. It identifies no promise MRU made to Mr. O'Neal apart from the duties the ADA and the Rehabilitation Act already imposed on MRU.

A claim for breach of contract must identify the promise broken. The Third District affirmed dismissal where a student "failed to identify a specific contractual promise the University breached" and relied instead on broad policy statements in a handbook. *Tercier v. Univ. of Miami, Inc.*, 383 So. 3d 847, 852 (Fla. 3d DCA 2023).

The SAC pleads that a contract formed when MRU accepted Mr. O'Neal's application and he elected to attend, SAC ¶ 54, but can only offer the following language as the contractual terms breached: MRU "complies with the Americans with Disabilities Act . . . and other applicable disability discrimination laws," provides accommodations "as required by applicable law," and provides "academic accommodations in accordance with federal and state statutes and regulations." *Id.* ¶56. Each is a promise to obey the law. A promise to perform a duty the law already imposes is not consideration for a contract and therefore does not form a valid basis for a contract. *Kuong v. Giordano*, 346 So. 3d 108, 116 (Fla. 1st DCA 2022).

Because the plaintiff has failed to identify a single contractual provision that has been breached, Defendant asks the Court to dismiss Count III for having failed to state a claim at contract upon which relief may be granted.

## IV. THE EMOTIONAL-DISTRESS AND PUNITIVE DAMAGES DEMANDED ARE UNAVAILABLE UNDER EVERY COUNT

Title III affords a private plaintiff an injunction and nothing further. The statute borrows the remedies of 42 U.S.C. § 2000a-3(a), which are equitable. 42 U.S.C. § 12188(a)(1); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1329 (11th Cir. 2013). Count I therefore supports no award of compensatory damages, no award of general damages, and no award of punitive damages.

Congress enacted Section 504 under the Spending Clause, and a recipient of federal money answers only in the remedies a contracting party would face. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 219–21 (2022). The Supreme Court has drawn two consequences from that premise. Emotional distress does not sound in contract, so a plaintiff recovers no emotional distress damages under the Rehabilitation Act. *Id.* at 221–22, 230. Punitive damages likewise do not sound in contract either, so a plaintiff recovers no punitive damages under Section 504. *Barnes v. Gorman*, 536 U.S. 181, 189 (2002).

A plaintiff recovers emotional distress damages for breach of contract only by pleading and proving an independent tort. *Henry Morrison Flagler Museum v. Lee*, 268 So. 2d 434, 436–37 (Fla. 4th DCA 1972). A plaintiff recovers punitive damages on the same terms: only a party who proves a tort independent of the acts that breach the contract may recover them. *Ferguson Transp., Inc. v. N. Am. Van Lines, Inc.*, 687 So. 2d 821, 822 (Fla. 1996). The Second Amended Complaint fails to plead an independent tort, and therefore Plaintiff's request for emotional distress damages and punitive damages should be stricken.

MRU respectfully requests that the Court dismiss Count I without prejudice for lack of jurisdiction, dismiss Counts II and III with prejudice, and strike the demands for emotional-distress and punitive damages. MRU reserves its right to seek its fees and costs upon entry of final judgment.

Dated: September 23, 2026.

Respectfully submitted,

*/s/ Robert A. O'Donnell*

Robert A. O'Donnell
Florida Bar No. 1011567
Sonia E. O'Donnell
Florida Bar No. 172538
O'Donnell Christopher LLP
700 S. Royal Poinciana Blvd., Ste. 705
Miami Springs, FL 33166
Telephone: 305-640-8958
*rodonnell@odonnellchristopher.com*
*sodonnell@odonnellchristopher.com*
**Counsel for Defendant**
**Miami Regional University**

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2026, a true and correct copy of the foregoing was served via CM/ECF to all parties designated to receive electronic filings in this case.

*/s/ Robert A. O'Donnell*
Robert A. O'Donnell